FILED

2022 Sep-30  PM 02:13
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **ALLEN L. MCMURRAY, on behalf of himself and all others similarly situated,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **Case No.: 2:19-cv-548-AMM** |
| **FORMEL D,** | ) ) | |
| **Defendant.** | ) | |

## ORDER

This case is before the court on Plaintiff Allen McMurray and the remaining opt-in plaintiffs' Renewed Motion To Approve Settlement Agreement. Doc. 208. For the reasons stated below, the motion is **GRANTED IN PART** and **DENIED IN PART**, and this action is **DISMISSED WITH PREJUDICE**. The court retains jurisdiction to enforce the Settlement Agreement.

## I.    BACKGROUND

The plaintiffs allege that Defendant Formel D violated the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.*, ("the FLSA") "by failing to pay its technicians overtime for all hours worked." Doc. 1 at 1. In his complaint, Mr. McMurray alleged that Formel D "required [him] and other similarly situated individuals to perform unpaid work in excess of forty hours per week without paying

them overtime wages." *Id*. ¶ 11. Mr. McMurray further alleged that Formel D "used a computerized system to keep track of the hours worked by [him] and the putative class he seeks to represent," and that "whenever employees complained . . . that their paycheck stubs did not reflect their overtime hours, Formel [D] stated that [it] would fix the issue," but "intentionally failed to do so." *Id*. ¶ 12. Mr. McMurray also alleged that Formel D "willfully failed and refused to compensate employees designated Technician for all time worked in excess of forty[ ]hours." *Id*. ¶ 13. Mr. McMurray alleged that Formel D "failed to compensate [him] and the class he seeks to represent at a rate of one and one-half times his regular hourly rate in violation of the FLSA." *Id*. ¶ 14. Mr. McMurray asserted his FLSA claim in a single count. *See id*. ¶¶ 21–26.

Formel D "admit[ted] that it is a global provider of services to several automotive industry original equipment manufacturers" and that, at the time the answer was filed, Mr. McMurray was "currently employed by [Formel D] as a Technician 1." Doc. 14 ¶¶ 3, 5.[1] Among other things, Formel D "denied that [Mr. McMurray] or any other similarly situated employees were denied overtime wages for work performed in excess of forty hours per week." *Id*. ¶ 11.

---

[1] The terms "Automotive Technician," "Technician 1," "Technician I," as well as "Advanced Automotive Technician," "Technician 2," and "Technician II," have been used interchangeably throughout this litigation. *See* Doc. 147 at 10 n.12.

Forty-four individuals returned opt-in forms. Doc. 200 ¶ 5. Eighteen of those opt-in plaintiffs were dismissed. *See* Docs. 93, 100, 134, 168. The remaining twenty-seven plaintiffs ("the Plaintiffs") are as follows:

| | | | |
|---|---|---|---|
| Allen L. McMurray | Tommy Williams | Jerry Mayhand | William Keith Walden, Jr. |
| Hayes Broom Jr. | Walter M. Beverly III | Demetrius Meeks | Isaac Teal, Jr. |
| Mary Dussett | Kelvin Dudley | Mokonde Hales, Sr. | Doric Smith |
| Homer Fuller | Shelica Green | Tashiro Dean Taylor | Jeffrey Lamar Ramsey |
| Jonathin Green | Lee Ann King | Tommie Carnal Taylor | Charles Edward Roan |
| Naomi Harrell | James W. Vickery | Cedric Spencer | Jean Altidor |
| Antonio Rodgers | Charles Blake Hubka | John Michael Williams | |

Doc. 208-3 at 1–2.

The parties negotiated a settlement of the Plaintiffs' claims and the Plaintiffs filed an Unopposed Motion For Approval Of Settlement And Supporting Memorandum Of Law. Doc. 200. The court denied that motion and directed the Plaintiffs to submit information and evidence sufficient for the court to fulfill its statutory obligations. Doc. 203. The Plaintiffs submitted a Renewed Motion To Approve Settlement Agreement, Doc. 208, and Formel D filed a response, Doc. 209.

## II.    ANALYSIS

The FLSA provides: "Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). For hours worked in excess of forty in a workweek, an hourly employee must be paid at least one and a half times his ordinary hourly wage. *Id*. § 207(a)(1). The FLSA also "provides for reasonable attorney's fees." *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009). The statute of limitations for an FLSA claim is two years, unless the violation was "willful," in which case the statute of limitations is three years. 29 U.S.C. § 255(a).

The Eleventh Circuit has held that "there are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees." *Nall v. Mal-Motels, Inc.*, 723 F.3d 1304, 1306 (11th Cir. 2013) (cleaned up). "The first is under the supervision of the Secretary of Labor." *Id*. The second is through a lawsuit, in which "the parties may present to the district court a proposed settlement and the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Id*. (cleaned up). The FLSA "requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated

adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Silva*, 307 F. App'x at 351.

"If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute[, the Eleventh Circuit] allow[s] the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982).

In the original motion for settlement approval, the Plaintiffs assert that "[t]here exists a bona fide dispute between the [p]arties as to the FLSA liability, the claimed hours worked by Plaintiffs, the appropriate rate of pay associated with the claimed hours allegedly worked by Plaintiff, and [Formel D's] compliance with the FLSA." Doc. 200 at 7. Specifically, the Plaintiffs assert that Formel D "contends it paid Plaintiffs properly for all hours worked, and therefore no additional compensation is due to Plaintiffs." *Id*. The Plaintiffs assert that they "claimed that [Formel D's] payroll system systematically under compensated them by not properly recording their overtime hours worked and their shift differential pay." *Id*. In other words, the "Plaintiffs' claims were that [Formel D's] payroll system(s) erroneously cut hours and shift differential pay from the Plaintiffs' pay checks." *Id*. The Plaintiffs' further "allege[d] that this flaw or error in [Formel D's] payroll system affected all workers in the class in the same way across the board." *Id*. According to

the Plaintiffs, Formel D "denies [their] claims and denies that its payroll system undercompensated [them]." *Id*.

Further, in the original motion, the Plaintiffs assert that the Settlement Agreement And Release ("Settlement Agreement") is fair and reasonable because "the Parties litigated this matter for more than three years and settled after discovery, decertification briefing, substantial briefing on Formel D's summary judgment motion, and a full day mediation with a Magistrate Judge." Doc. 200 at 6. Further, the Plaintiffs assert that, "[c]onsidering [Formel D's] time and pay records and Plaintiffs' testimony regarding their hours worked, Plaintiffs developed a damage model based on the number of months worked by each Plaintiff." *Id*. The Plaintiffs assert that, "[u]sing that damage model, Plaintiffs negotiated at arm[']s length and reached the Settlement Agreement[,] which provides recovery to each Plaintiff based on the number of months that they worked during the statutory period." *Id*.

In the original motion, the Plaintiffs also assert that the service award to Mr. McMurray, and the request for attorneys' fees and costs, are reasonable. Doc. 200 at 7–9.

In the revised motion for settlement approval, the Plaintiffs address the following issues raised in the court's order denying the original motion for settlement approval: "(1) filing the settlement documents under seal; (2) absence of signatures on the settlement agreement; (3) revised calculations that include

liquidated damages; (4) reasonableness of attorneys' fees and costs; (5) justification for service award and general release agreement; and, (6) discrepancies in opt-in calculation table." Doc. 208 at 2. As for the filing of settlement documents under seal, the Plaintiffs attached unredacted copies of the Settlement Agreement to its renewed motion, Doc. 208-1, and Formel D attached an unredacted copy to its response, Doc. 209-1.

As for the absence of signatures, the Plaintiffs assert that "[t]wenty-six of the twenty-seven remaining Plaintiffs have executed the settlement agreement[]" and "[d]espite great effort, including, but not limited to, searches using Intelius, the Federal Bureau of Prisons, Jefferson County Sheriff's Department, and the Alabama Department of Corrections websites, [the Plaintiff's] counsel has not been able to contact absent Plaintiff, Hayes E. Broom." Doc. 208 at 2. The Plaintiffs filed copies of the twenty-six executed Settlement Agreements. Doc. 208-1. No party suggests that a single absent plaintiff's missing signature compromises the court's authority to approve the settlement, and the court retains jurisdiction over this case to enforce the settlement, including any enforcement issues concerning Mr. Broom.

As for the discrepancies in the opt-in calculation table, the court has reviewed the revised Opt-In Calculations table, Doc. 208-3, and finds that it does not appear to contain discrepancies.

The court addresses in turn each of the remaining issues. The court examined the proposed settlement for fairness. More particularly, the court considered: (1) whether the settlement constitutes a compromise of the Plaintiffs' FLSA claims; (2) the nature of the dispute, including the hours the Plaintiffs assert that they worked, the amount they were paid, and whether the settlement amount includes liquidated damages; (3) whether the Settlement Agreement includes any side deals such as a confidentiality agreement or a release of claims other than those under the FLSA; and (4) whether the attorney's fee provided by the settlement is reasonable and free from any conflict of interest. *See Beard v. Dolgencorp, L.L.C.*, No. 7:10-cv-1956-SLB, 2013 WL 12253571, at *4 (N.D. Ala. Mar. 29, 2013).

According to the Plaintiffs, "[a] bona fide dispute exists between Plaintiffs and [Formel D] in this case regarding Plaintiffs' claim for unpaid overtime wages under FLSA and the alleged damages associated with same." Doc. 208 at 3. Further, according to the Plaintiffs, Formel D "has asserted various defenses, including that Plaintiffs were paid for all hours worked overtime during their employment, as evidenced by Plaintiffs' disputed time-sheets and other documentary evidence." *Id*. Also, according to the Plaintiffs, "some Plaintiffs signed releases stating that they had been paid all monies owed them by [Formel D]." *Id*. (citing Doc. 185-2 at 2–33). The Plaintiffs thus asserts that "the settlement arrived at was motivated in large

part by the Plaintiffs' desire to avoid the risks, uncertainties, time and expense associated with further litigation." *Id.*

Further, the Plaintiffs assert that "[t]he parties negotiated the settlement based on months worked and calculated an amount from those based on the pool of money allocated for the class," and "counsel then decided that 50% of the negotiated sum should be deemed wages and 50% liquidated damages." *Id.*

Counsel has represented to the court that each Plaintiff's total share of the settlement includes compensation in equal amounts for unpaid wages and for liquidated damages. The amount of each Plaintiff's share was calculated using two data points: the amount of that Plaintiff's lost wages and the total pool of settlement money available. Accordingly, the court is satisfied that these calculations reflect compensation for both for lost wages and as liquidated damages in equal amounts, 29 U.S.C. § 216(b), adjusted by a discount factor that reflects the Plaintiffs' "desire to avoid the risks, uncertainties, time and expense associated with further litigation," Doc. 208 at 3. Accordingly, the court finds that the proposed settlement reflects a reasonable compromise of the Plaintiffs' FLSA claims and the parties' legitimate dispute as to the extent to which the Plaintiffs are due relief.

Further, Section 9.2 of the Settlement Agreement provides that "[u]pon the Effective Date, each Plaintiff, on behalf of themselves and their respective agents, representatives, executors, estates, heirs, administrators, attorneys, insurers,

successors and assigns shall be deemed to have forever released and discharged the Releasees from any and all Released Claims, shall covenant not to sue the Releasees with respect to any Released Claims, and will be permanently and forever barred from suing or otherwise asserting any Released Claim against any of the Releasees." *See, e.g.*, Doc. 209-1 at 5. Section 9.3 provides that, "[i]n exchange for this release of claims by Plaintiffs, Formel D will make all payments approved by the Court pursuant to this Settlement. Formel D also releases any claim for attorneys' fees that it has against opt-in plaintiffs who were dismissed with prejudice before the Effective Date of this Settlement Agreement as reflected in Docs. 108, 119, 134, 135, 150, and 151." *See, e.g.*, *id.*

Section 1.10 of the Settlement Agreement defines Released Claims as "any and all claims, demands, causes of action, rights to relief, fees and liabilities of any kind, whether known or unknown, either that were asserted in or could have been asserted in this Action that Plaintiffs have or may have against any of the Releasees (as defined below), from the beginning of time through the Effective Date, including, but not limited to, all claims for wages, overtime, expenses, vacation, paid time off, breach of contract, unjust enrichment, quantum meruit or other compensation arising under federal, state, or local law, including but not limited to all claims arising under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*; and Alabama or other applicable state's wage and hour laws, common law, administrative law, or statutory

law, including any claims for any penalty, interest, taxes, attorneys' fees, or additional damages or costs which arise from or relate to the claims described above." *See, e.g.*, *id*. at 2–3.

Further, Section 1.11 of the Settlement Agreement defined Releasees as "Formel D USA, Inc. and any and all current and former parents, subsidiaries, related companies or entities, partnerships, joint ventures, or other affiliates, and, with respect to each of them, all of their predecessors and successors, benefits plans and programs, insurers, contractors, subcontractors, successors, and assigns, and, with respect to each such entity, any and all of its past, present, and future employees, trustees, officers, directors, stockholders, owners, representatives, assigns, attorneys, administrators, fiduciaries, agents, insurers, trustees, and any other persons acting by, through, under, or in concert with any of these persons or entities and their successors and assigns." *See, e.g.*, *id*. at 3.

This kind of release is subject to heightened scrutiny because it potentially represents "a 'side deal' in which the employer extracts a gratuitous . . . release of all claims in exchange for money unconditionally owed to the employee." *See Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1351 (M.D. Fla. 2010) (cleaned up); *see also Hogan v. Allstate Beverage Co.*, 821 F. Supp. 2d 1274, 1282 (M.D. Ala. 2011) ("Any amount due that is not in dispute must be paid unequivocally; employers may not extract valuable concessions in return for payment that is

indisputably owed under the FLSA."). However, under the particular circumstances of this case—in which the Plaintiffs negotiated a settlement with the assistance of counsel and will receive reasonable compensation for their unpaid overtime despite a bona fide dispute as to FLSA coverage, and Formel D released its claim to attorneys' fees that were ordered by the court—the court finds that such a release does not undercut the reasonableness of the settlement. Accordingly, the court finds the release provision reasonable and supported by consideration outside of the consideration exchanged for the FLSA claims.

In the original motion for settlement approval, the Plaintiffs assert that Mr. McMurray "is due to receive a service award for his diligence in assisting in the prosecution of this case to include serving as a liaison between Plaintiffs' [c]ounsel and hard to find opt-ins, encouraging opt-ins to show up for their depositions, providing Plaintiffs' [c]ounsel with insight into Formel D's failure to pay overtime, attending two mediations, and otherwise actively pursuing his rights and the rights of others." Doc. 200 at 8. Specifically, the Plaintiffs assert that, "[i]n recognition of his service to the opt-in Plaintiffs, the Settlement Agreement provides that [Mr.] McMurray may seek from the Total Settlement Payment a service award in an amount not to exceed $3,000." *Id.* ¶ 13, at 4. Further, the Plaintiffs assert that, "[i]f such payment is approved by the Court, [Mr.] McMurray is obligated to execute a

separate release that releases additional employment related claims and includes a no-rehire provision, among other non-monetary terms." *Id*.

When ruling on that motion, the court directed the Plaintiffs to discuss whether *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244 (11th Cir. 2020), has any impact on the court's decision and analysis regarding the reasonableness of the service award in any supplemental motion or briefing. The court further directed the Plaintiffs to discuss the reasonableness of the provisions in the general release, including the release provisions, the non-reemployment provisions, and the confidentiality provisions, and to provide legal authority in support of their arguments.

In the renewed motion, the Plaintiffs assert that *Johnson*, 43 F.4th 1138, "prohibits any additional payments to a class member for serving in a representative capacity" and that "[w]hether the new ban applies to representative payments in FLSA context actions was not clearly discussed." Doc. 208 at 5. The Plaintiffs assert that the dissent "cogently explains how the appellate panel got off track by reinvigorating prior Supreme Court decisions from two centuries ago in *Trustees v. Greenough*, 105 U.S. 527 (1881); [and] *Cent. R.R. & Banking Co. v. Pettus,* 113 U.S. 116 (1885)." *Id*. at 5–6. According to the Plaintiffs, "[t]he dissent explained that the discussion was restricted to Rule 23 representative actions, not FLSA actions." *Id*. at 6. The Plaintiffs distinguish Mr. McMurray from the plaintiff in

*Greenough* because that plaintiff was a bondholder seeking "to protect his investment for himself and others" and Mr. McMurray "is a laborer trying to capture unpaid overtime wages for himself and others." *Id*. The Plaintiffs also assert that "there was no Fair Labor Standards Act of 1938" at the time of the *Greenough* decision.

The Plaintiffs further assert that *Turner v. Rosen Hotels & Resorts, Inc.*, No. 6:21-cv-161-CEM-GJK, 2022 WL 3046834, at *6–8 (M.D. Fla. June 15, 2022), *report and recommendation adopted*, No. 6:21-cv-161-CEM-DAB, 2022 WL 3042512 (M.D. Fla. Aug. 2, 2022), "concludes that the newly discovered incentive payment ban includes FLSA cases." Doc. 208 at 6. The Plaintiffs also cite *Poblano v. Russell Cellular Inc.*, 543 F. Supp. 3d 1293, 1295 n.1 (M.D. Fla. 2021), because that court "attribute[d] significance to this action being a collective action, and not a class action," and "declin[ed] to approve FLSA . . . settlement agreement due to service awards to named plaintiffs." Doc. 208 at 6–7. Further, according to the Plaintiffs, "it appears that under *Johnson*, the relevant analysis is whether the payments are truly for Named Plaintiffs' time and to reward them for bringing this litigation." *Id*. at 7.

The Plaintiffs assert that, "[a]lthough the FLSA contemplates an opt-in scenario, the reality of this case and many FLSA cases [is that] certain individuals do spend time and energy trying to re-coup back wages on behalf of themselves and

others." *Id*. The Plaintiffs assert that Mr. McMurray "spent many hours assisting counsel and spent additional time in participating in mediations." *Id*.

According to the Plaintiffs, "to ban payments to anyone serving in a representative capacity in this circuit is for the Supreme Court." *Id*. The Plaintiffs further assert that "[t]he dangers of plucking old decisions from distant eras while ignoring the modern landscape and subsequent developments in the law was recently highlighted by Justice Breyer." *Id*. at 8 (citing *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2181 (2022)). According to the Plaintiffs, "[t]he responsibilities . . . to collect unpaid legally required overtime as overtime did not exist in the days of [*Greenough*] is an example of a decision being of little help to resolution of a modern issue." *Id*.

Accordingly, the Plaintiffs' "[c]ounsel requests that approval of the agreement not be delayed and $3,000.00 for Mr. McMurray be placed in escrow pending further review, if any, and a decision by the United States Supreme Court of the 11th Circuit decision in *Johnson* . . . or in the alternative[,] if this is not a palatable option, the request for incentive payment is withdrawn." *Id*.

Finally, the Plaintiffs assert that "[d]istrict court cases in the Eleventh Circuit (including Alabama district courts) routinely refuse to approve FLSA settlement agreements that contain confidentiality and non-reemployment provisions." *Id*. at 9. But, according to the Plaintiffs, "even though such provisions are generally

unenforceable, it does not preclude approval of a settlement agreement, if such provisions can be stricken from the agreement." *Id*. Because "the only Plaintiff subject to a non-reemployment provision is Mr. McMurray[,]" the Plaintiffs "request[] that the non-reemployment clause be stricken as [it] relate[s] to him." *Id*. The Plaintiffs "also request that any confidentiality provision applicable to [Mr.] McMurray . . . be stricken as well." *Id*. at 9–10.

Formel D responded that, "[i]n the Settlement Agreement and Release, Section Seven addresses a potential service award to Allen McMurray[,]" and asserts that, "[i]f such an award is approved by the Court, [Mr.] McMurray agreed to execute a separate release agreement including . . . a no-hire and confidentiality provision." Doc. 209 at 1. According to Formel D, "[a]s part of that separate release agreement, Formel D agreed that it would not oppose [Mr.] McMurray's request for a Service Award." *Id*.

Formel D asserts that "[i]f the Court denies [Mr.] McMurray's request for a Service Award, Formel D does not oppose Plaintiffs' request to strike the no-hire and confidentiality provision from the separate release agreement." *Id*. at 2. Formel D further asserts that "[i]f the Court approves [Mr.] McMurray's request for a Service Award, Formel D opposes Plaintiffs' request to strike the no-hire and confidentiality provision from the separate release agreement." *Id*. According to Formel D, "[b]ecause the Service Award constitutes additional consideration for

[Mr.] McMurray, the additional provisions that go beyond the release of the FLSA claim can be approved." *Id.*

In *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244 (11th Cir. 2020), the Eleventh Circuit held that the following rule is "fairly clear": "A plaintiff suing on behalf of a class can be reimbursed [from the common fund] for attorneys' fees and expenses incurred in carrying on the litigation, but he cannot be paid a salary or be reimbursed for his personal expenses. It seems to us that the modern-day incentive award for a class representative is roughly analogous to a salary . . . ." *Id.* at 1257. The court further held that it "think[s] that modern-day incentive awards present . . . pronounced risks," and "are intended not only to compensate class representatives for their time (*i.e.*, as a salary), but also to promote litigation by providing a prize to be won (*i.e.*, as a bounty)." *Id.* at 1258.

The court observed that "[t]he incentive award that [the plaintiff] s[ought] . . . [wa]s part salary and part bounty." *Id.* The court found that the "[c]lass counsel's fee petition asserted that [the plaintiff] was entitled to the $6,000 incentive payment because he 'took critical steps to protect the interests of the class, and spent considerable time pursuing their claims'—*e.g.*, by 'frequently communicating with his counsel,' 'keeping himself apprised of the matter,' 'approving drafts before filing,' and 'responding to . . . discovery requests." *Id.* (cleaned up). The court further found that, "[i]n other words, he want[ed] to be compensated for the time he spent

litigating the case, or his 'personal services'—an award that the Supreme Court has deemed 'decidedly objectionable.'" *Id*. (quoting *Internal Imp. Fund Trustees v. Greenough*, 105 U.S. 527, 537 (1881)).

Further, "[i]n his brief . . . , [the plaintiff] also suggest[ed] that he [wa]s requesting a bonus for bringing the suit, inasmuch as he has 'subjected himself to scrutiny from [the defendant], class members, and the public at large,' 'successfully brought a class action that provide[d] meaningful cash benefits to thousands of persons,' and 'provided an important public service by enforcing consumer protection laws.'" *Id*. The Eleventh Circuit thus held that "[w]hether [the plaintiff's] incentive award constitute[d] a salary, a bounty, or both, [the court] th[ought] it clear that Supreme Court precedent prohibit[ed] it." *Id*. at 1258–59.

The plaintiff argued *Greenough*, 105 U.S. 527, and *Pettus*, 113 U.S. 116 were not binding "because neither discusse[d] incentive awards to class representatives, as both pre-date Rule 23 by decades." *Johnson*, 975 F.3d at 1259 (cleaned up). The *Johnson* court identified "[t]wo problems" with the plaintiff's argument." *Id*. "First, [the court held that the plaintiff] fail[ed] to engage with the logic of *Greenough*, which, while not directed to class representatives per se, involved an analogous litigation actor—*i.e.*, a 'creditor seeking his rights in a judicial proceeding' on behalf of both himself and other similarly situated bondholders." *Id*. (quoting *Greenough*, 105 U.S. at 538). "Second, [the court held that the plaintiff's] argument implie[d]

that Rule 23 has something to say about incentive awards, and thus has some bearing on the continuing vitality of *Greenough* and *Pettus*." *Id*. But the court held that "it doesn't—and so it doesn't: Rule 23 does not currently make, and has never made, any reference to incentive awards, service awards, or case contribution awards." *Id*. (cleaned up). Accordingly, the court held that "[t]he fact that Rule 23 post-dates *Greenough* and *Pettus* . . . is irrelevant." *Id*.

The plaintiff also argued that "[i]ncentive awards are routine in class actions, . . . so *Greenough* and *Pettus* c[ould not] possibly prohibit them." *Id*. The court observed that the plaintiff "[wa]s partly right; incentive awards do seem to be fairly typical in class action cases." *Id*. (cleaned up). But, the court held that "the judiciary ha[d] created these awards out of whole cloth, and few courts have paused to consider the legal authority for incentive awards." *Id*. (cleaned up). The court further held that it was "not at liberty to sanction a device or practice, however widespread, that is foreclosed by Supreme Court precedent. *Id*. at 1260.

The court thus concluded "that *Greenough* and *Pettus* prohibit the type of incentive award that the district court approved [in *Johnson*]—one that compensates a class representative for his time and rewards him for bringing a lawsuit." *Id*. Accordingly, the court "reverse[d] the district court's approval of [the plaintiff's] $6,000 award." *Id*. at 1260–61.

In light of the foregoing precedent, the court finds that the proposed service award is an impermissible incentive award, so the Plaintiffs' request that $3,000 of the $103,000 common fund that shall be paid to the Plaintiffs be reserved for Mr. McMurray as a "service award" is **DENIED**. Each Plaintiff's pro rata share shall be based on the whole $103,000 common fund, not a $100,000 fund. Accordingly, because the service award is contingent upon Mr. McMurray signing the separate release agreement, *see, e.g.*, Doc. 209-1 at 5, which agreement has not been filed in the public record, the court need not determine whether the provisions contained in that agreement are reasonable.

The FLSA "requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Silva*, 307 F. App'x at 351. "The starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) (cleaned up). "The product of these two figures is the lodestar and there is a strong presumption that the lodestar is the reasonable sum the attorneys deserve." *Id.* (cleaned up).

In the original motion for settlement approval, the Plaintiffs assert that their counsel "are seeking $122,000.00 in fees and expenses in this case." Doc. 200 at 8.

The Plaintiffs assert that "[t]his represents $107,000.00 in attorneys' fees and $15,000.00 in filing fees, deposition costs, copying and postage costs." *Id*. To support these calculations, the Plaintiffs assert that, "[i]n reviewing the docket sheet in this matter and the numerous discovery motions and other pleadings, it is plain to see that Plaintiffs' [c]ounsel has expended time and resources well in excess of what is claimed in the motion for preliminary approval." *Id*. The Plaintiffs assert that their counsel, "among other things, filed a motion for conditional certification, attended two mediations, undertook two-plus years of discovery where almost thirty depositions were taken, responded to numerous discovery motions, reviewed thousands of pages of pay records and employee files, responded to a motion for decertification, [and] assisted with preparation of joint pretrial order." *Id*.

Further, according to the Plaintiffs in the original motion, "[t]his is not a case where Plaintiffs' [c]ounsel's fees and expenses dwarf the recovery of the Class members to such a degree that it appears unconscionable on its face." *Id*. at 9. The Plaintiffs assert that "WC Attorney Rod Cooks and Charity Davis of the Law Firm of Gilchrist-Davis were recently awarded $400.00 and $325.00 per hour, respectively, in a single plaintiff discrimination case." *Id*. (citing *Brown v. Ramada Birmingham Airport*, No. 2:17-cv-01671-RDP (N.D. Ala. Dec. 11, 2020), ECF No. 36). The Plaintiffs also assert that "Plaintiffs' counsel in this matter are experienced wage and hour attorneys as reflected by Plaintiffs' counsel's declaration." *Id*. at 6.

According to the Plaintiffs, "if the Court required the firms to tabulate each hour expended here it would well exceed the amount requested in attorneys' fees[;] . . . [t]hus, the fee request is fair and reasonable given counsels' years of experience, competent advocacy, and success in this case as well as the market rate for similar litigation." *Id*. at 9.

Because the Plaintiffs had not provided the number of hours that the Plaintiffs' attorneys spent on this case, nor did they provide the specific costs and expenses incurred, the court held that it had no basis to determine whether the attorneys' fees, costs, and expenses provided for in the Settlement Agreement were reasonable. Doc. 203 at 13. The court found that, "[b]ased on rates awarded to the Plaintiffs' counsel in another case and the amount of attorneys' fees requested, it appears that the Plaintiffs assert that a minimum of approximately 265 hours were expended on this case, but the court cannot rely on such speculation to award fees, and the Plaintiffs do not specify the work that corresponds with those hours." *Id*. The court further found that the Plaintiffs did not "specify the fees and costs comprising the requested $15,000.00, other than generally stating that such request is for filing fees, deposition costs, copying and postage costs." *Id*. (cleaned up). Accordingly, the court ordered the Plaintiffs "to provide evidence to support the amount of attorneys' fees, costs, and expenses provided for in the Settlement Agreement." *Id*.

In the renewed motion for settlement approval, the Plaintiffs assert that their "attorneys Roderick T. Cooks, Charity Gilchrist-Davis, and Lee Winston collectively expended 701.70 hours prosecuting the Plaintiffs' claims." Doc. 208 at 3. According to the Plaintiffs, "[t]he teams' hours are noted in the invoice attached to this pleading." *Id*. at 3–4 (citing Doc. 208-2).

The Plaintiffs assert that their "counsel defended and/or took over twenty-five depositions, responded to forty plus sets of discovery, reviewed thousands of documents, responded to numerous non-dispositive motions, filed a motion for conditional certification, responded to a motion to decertify, attended multiple conferences with the Court and responded to a motion for summary judgment." *Id*. at 4. According to the Plaintiffs, their "attorneys have not included in their invoice the hundreds of emails exchanged between the parties, the numerous telephone and video-conferences between the parties, client calls and meetings, and a claim for compensation for the time spent litigating the issue of a reasonable fee, i.e., for time spent on the fee application." *Id*.

The Plaintiffs further assert that their "attorneys bill out at the following rates: Roderick T. Cooks $400.00 per hour (twenty-three year practitioner); Charity Gilchrist-Davis $325.00 per hour (fourteen-year practitioner) and Lee Winston $425.00 (thirty-year practitioner)." *Id*. According to the Plaintiffs, "[a] true and correct statement prepared by the[ir] . . . counsel of hours spent in representing the

Plaintiffs, is attached as to th[eir renewed motion]." *Id*. (citing Doc. 208-2). Further, according to the Plaintiffs, "[h]ad undersigned counsel charged [them] at the abovementioned hourly rates for all services rendered with respect to this matter, Plaintiffs would have owed $317,381.25 in attorneys' fees." *Id*. (citing Doc. 208-2).

Also, according to the Plaintiffs, "[i]n addition to the recovery for attorneys' fees, Plaintiffs' counsel advanced all the costs of litigation associated with this representation." *Id*. at 4–5. The Plaintiffs assert that, "[d]uring the course of investigating and litigating all of Plaintiff's claims, undersigned counsel advanced . . . in excess of $10,601.36 in litigation costs." *Id*. at 5. According to the Plaintiffs, they "attach[ed] a true and correct set of receipts representing the litigations costs for which receipts can be located." *Id*. (citing Doc. 208-2). Further, according to the Plaintiffs, "[t]here are postage costs, copying costs, and litigation expenses for which, due to the length of the litigation and other factors, receipts are not available." *Id*.

Finally, according to the Plaintiffs, Mr. McMurray and the opt-in Plaintiffs "have indicated that they have no objections to the total amount of attorneys' fees and litigation costs requested by the undersigned counsel[,]" which "should weigh heavily in favor of this Court approving the proposed allocation." *Id*. (citing Doc. 208-1).

The court has reviewed the invoiced and receipts submitted by the Plaintiffs, and finds the $122,000.00 in proposed attorney's fees and costs are reasonable and do not taint the settlement with a conflict of interest. Specifically, the invoices for attorneys' fees establish that Roderick T. Cooks and Lee Winston collectively worked over 700 hours on this litigation from February 18, 2019 to September 27, 2022, and billed a total of $317,381.25 in attorneys' fees. Doc. 208-2 at 1–17. Accordingly, the court finds that the $111,398.64 requested for attorneys fees is reasonable, as it is nearly a third of the total fees billed by only two of the three attorneys for the Plaintiffs.

The invoices also provide that the total expenses spent on miscellaneous items, filing fees, court reporting fees, mediation fees, and copying costs totals $10,601.36." *Id*. at 17. The receipts submitted establish that the Plaintiffs' attorneys' expenses were at least over $6,000. *Id*. at 18–30. Because the Plaintiffs assert that other receipts for costs of this litigation are not available, and in light of the submitted receipts totaling over $6,000 in expenses, the court finds that the $10,601.36 in costs is reasonable.

## III.    CONCLUSION

For the foregoing reasons, the Plaintiffs' Renewed Motion To Approve Settlement Agreement, Doc. 208, is **DENIED** as to the $3,000 proposed incentive award from the $103,000 common fund for Mr. McMurray, and **GRANTED** in all

other respects. Accordingly, this action is **DISMISSED WITH PREJUDICE**. The

court retains jurisdiction to enforce the Settlement Agreement.

      **DONE** and **ORDERED** this 30th day of September, 2022.


                                  **ANNA M. MANASCO**
                                  UNITED STATES DISTRICT JUDGE